IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jana Yntema,  Case No. 3:04CV7360

    Plaintiff

  v.  ORDER

United States Postal Service,

    Defendant.

Jana Yntema brought suit against the U.S. Postal Service (USPS) alleging the USPS interfered with her rights under the Family Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601 *et seq.*, and unlawfully terminated her employment in retaliation for exercising those rights.

Jurisdiction exists under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

Pending are Yntema's motion for summary judgment on the interference claim and the USPS's motion for summary judgment on both claims.

For the following reasons, Yntema's motion shall be granted and the USPS's motion shall be granted in part and denied in part.

**Background**

Yntema works as a mail carrier for the USPS at its Reynolds Corners Station in Toledo, Ohio. She suffers from chronic anxiety and depression. In November, 2002, Yntema applied for and was granted FMLA leave from November 18, 2002 through May 18, 2003.

On August 19, 2003, Yntema and her doctor, Christopher Sherman, prepared another FMLA form. On this form, Dr. Sherman stated Yntema suffered from severe anxiety and depression, and

recommended she work a reduced work schedule of no more than six hours per day. He indicated the duration of Yntema's condition and the need for a reduced work schedule was ninety days.

Yntema submitted that FMLA form, which contains a USPS date stamp indicating the USPS received it at the Reynolds Corners station on August 21, 2003.

Jeff Purvis, one of Yntema's supervisors, claims Yntema submitted a different medical form, not the FMLA form, to him. He testified he asked Yntema whether her request was work related or personal, and she replied it was personal.

Because Yntema said the reduced schedule request was personal, Purvis treated her request as a light duty request under the collective bargaining agreement, rather than a FMLA request. Yntema, however, was unaware that the USPS was considering her request under the collective bargaining agreement rather than under the FMLA.

Proceeding under the collective bargaining agreement procedures, Purvis told Yntema he would temporarily grant the request, but she would need to submit a written request to Postmaster Robert Lewis by September 5, 2003. Yntema sent this request on September 5, 2003, stating that her request for a six hour workday was per "doctor's orders."

On September 5, 2003, Postmaster Lewis sent Yntema a letter granting her light duty work until September 25, 2003. In his letter, Postmaster Lewis told Yntema she would need to submit a new request by September 25, 2003, and would need new medical forms. While on light duty, the USPS reduced Yntema's schedule to a six hour workday.

Yntema timely submitted that new request to Postmaster Lewis, restating that her request for a six hour workday was per "doctor's orders." She did not submit medical forms.

In mid-October, a USPS supervisor told Yntema not to report to work until she had forms from Dr. Sherman stating a need to continue the reduced work schedule. While trying to obtain the new medical forms from Dr. Sherman, Yntema was unable to work for three days. Instead of providing a new FMLA form, Dr. Sherman wrote on the bottom of Yntema's original FMLA form that he was modifying the duration "per employer's request" to thirty days. Yntema provided this paperwork to the USPS and returned to her job.

On December 9, 2003, after the expiration of the thirty days, a USPS supervisor told Yntema that she could not work until she submitted required medical forms from her doctor. The parties dispute whether this supervisor told Yntema to submit another request to Postmaster Lewis.

On December 11, 2003, Yntema returned to work and submitted the requested medical forms. She did not, however, submit an additional request to Postmaster Lewis for light duty. When Kim Hazel, a supervisor, informed Yntema that she needed to submit a request to Postmaster Lewis for light duty, Yntema told Hazel that she did not think the written request was necessary. Upset with Hazel and the need to submit the request, Yntema started to carry her mail for delivery towards the door.

At this point, another USPS supervisor, Christy Walton, approached Yntema. Yntema is unable to remember the details of this conversation although acknowledges that they talked about the fact she had not submitted a request for light duty to Postmaster Lewis. She then yelled to Jeff Nichols, another supervisor, that she did not know she needed to submit the request. Hazel then instructed Yntema not to deliver her mail.

Yntema then left the building and approached her delivery vehicle. Once outside, Walton again confronted Yntema. The parties dispute what Yntema said and did. The USPS contends

3

Yntema made profane remarks, threatening statements, and *inter alia*, hit her delivery vehicle with her fists. Yntema denies making profane or threatening statements, but admits she was upset and raised her voice. After the altercation, Walton again instructed Yntema that she need to "cool down" and leave work.

Hazel and Walton then reported the incident to USPS supervisor Eric Simon. In this report, Hazel and Walton described Yntema's conduct as "profane and threatening." As a result, Simon placed Yntema on emergency off-duty status.

On January 14, 2004, the USPS sent Yntema a letter giving her notice of termination. In this letter, the USPS stated it had "just cause" to terminate Yntema because her conduct on December 11, 2003, violated a "Last Chance Agreement" she had previously signed.[1]

As result of an outcome in Yntema's favor during a subsequent grievance proceeding, the USPS has since reinstated Yntema as a mail carrier. She has also been awarded full back pay, that has yet, according to the parties, to be received.

**Discussion**

The FMLA entitles employees who are "suffering from a serious health condition" and "unable to perform the functions" of their job to twelve weeks of unpaid leave per year. *Hoge v. Honda of Am. MFG., Inc.*, 384 F.3d 238, 246 (6th Cir. 2004) (citing 29 U.S.C. § 2612(a)(1)(D)) (internal quotations omitted).

---

[1] On December 22, 2000, Yntema signed a "Last Chance Agreement" after she was charged with making a false police report, in which she alleged her supervisor, Simon, stalked her. In the "Last Chance Agreement, " Yntema agreed to follow the USPS's rules and regulations, and in the event that she failed to follow these, that she would be given "no further consideration." An arbitrator in February, 2005, found this agreement invalid for indefinite terms.

An employee can bring two types of claims under the FMLA: an interference action, 29 U.S.C. § 2615(a)(1), or a retaliation action, 29 U.S.C. § 2615(a)(2). *Hoge*, 384 F.3d at 244. Yntema brought both types of claims against the USPS.

The USPS argues on summary judgment that each of Yntema's claims fails. Yntema contends she is entitled to summary judgment on her interference claim, and sufficient issues of material fact remain as to the retaliation claim precluding summary judgment.

I will address both claims in turn.

### A. Interference with FMLA Rights

### 1. Defendant Violated Plaintiff's FMLA Rights

To prove that an employer has unlawfully interfered with an employee's FMLA rights, an employee must show:

> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the Act, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee benefits to which he was entitled.

*Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 454 (6th Cir. 2005).

Yntema and the USPS do not dispute the first three elements of an interference claim. At issue is whether Yntema gave the USPS notice, and if so, whether she was denied benefits under the FMLA.

The USPS contends Yntema failed to give notice of a FMLA claim because she failed to comply with the USPS's internal procedures. Yntema responds such compliance is not necessary to assert a FMLA claim and in any event, the internal procedures in place in August, 2003, were in a state of flux.

"[E]mployers cannot deny FMLA relief for failure to comply with their internal notice requirements." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 723 (6th Cir. 2003) (citing 29 C.F.R. § 825.302). Thus the issue is whether Yntema complied with the notice requirements under the FMLA, not under the USPS's requirements.

Under the FMLA, whether an employee provides notice of an intention to take leave to an employer depends on the circumstances of the alleged request. *Walton v. Ford Motor Co.*, 424 F.3d 481, 486 (6th Cir. 2005). The employee need not mention the FMLA, but must give the employer enough information to conclude he or she is requesting to take time off for a "'serious health condition.'" *Id.* (citing *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998)).

Yntema contends she gave the USPS sufficient notice to conclude she was requesting a reduced work schedule because of a serious health condition. She argues her FMLA form, USPS date stamped August 21, 2003, gave the USPS notice of her FMLA request. In addition, Yntema argues that evidence shows the USPS had notice of her FMLA request. She presents evidence, including: branch manager Mary Smith's testimony identifying the forms as Yntema's "family leave papers;" the letter she sent Postmaster Lewis that indicated her request for six-hour days was per Dr. Sherman's order; and her "everything reports"[2] demonstrating the USPS coded the light work as FMLA leave.

In response, the USPS presents Purvis's testimony that Yntema only submitted a "little prescription pad," and that Yntema told him the reason for the requested leave was "personal."

---

[2] "Everything reports" are the USPS's weekly reports that record an employee's time worked, annual leave, sick leave, FMLA leave, and leave without pay.

6

Taking the evidence in the light most favorable to the USPS, there is no genuine issue of material fact that the USPS had notice of her FMLA request. Yntema's FMLA form was undoubtedly received by someone at the post office on August 21, 2003, because it was stamped with a USPS stamp as of that date. On this form, Dr. Sherman indicated Yntema was suffering from "severe anxiety and depression," which qualifies as a serious medical condition, and that she needed FMLA leave via a reduced work schedule.[3]

Yntema contends that, after having given FMLA notice to the USPS, Postal Service interfered with her FMLA rights by: 1) mischaracterizing her FMLA leave as light duty under the collective bargaining agreement; and 2) failing to define intermittent leave in the USPS's FMLA Handbook. Yntema alleges as a result of the USPS's mischaracterization, the USPS required her to return to her doctor and request documents certifying her medical condition and need for a reduced work schedule more often than the FMLA allows.[4]

The USPS responds that even if Yntema provided notice, the FMLA form Yntema provided to the Postal Service did not satisfy FMLA requirements.

---

[3] Purvis's testimony, moreover, does not diminish the notice Yntema provided to the USPS. Purvis's determination that Yntema's request was under the collective bargaining agreement, not the FMLA, does not lead to the conclusion that plaintiff did not provide notice. Yntema told Purvis she needed leave for a medical condition, albeit "personal." Accordingly, Yntema provided sufficient notice to the USPS of an intention to take leave for a serious medical condition. This notice meets the FMLA's requirements.

[4] Under the FMLA, the process of an employee requesting her doctor for documents certifying her medical condition and need for FMLA leave is known as certification. 29 C.F.R. § 825.117. If the employer requests the employee to repeat the process, it is known as recertification.

7

The response to this contention is that, had the USPS properly treated Yntema's request as a FMLA matter, it would have asked for any additional medical information that was needed, and she would have addressed any concerns. An employer has the "duty to collect additional information . . . that would be necessary to make his [the employee's] leave comply with FMLA requirements." *Cavin*, 346 F.3d at 726; 29 C.F.R. § 825.208(a). Any defect in the information is attributable to the unresponsiveness of the USPS under FMLA, and not to any insufficiency on Yntema's part in how she presented her request for leave.

The USPS asserts further that it did not err in requiring medical certification every thirty days. For support for this contention, the USPS asserts that 29 C.F.R. § 825.308(a)[5] allows it to request recertification every thirty days for a chronic condition.

In response, Yntema argues that the USPS misinterprets § 825.308. According to her, 29 C.F.R. § 825.308(b) applies rather than § 825.308(a). Under subsection (b), an employer may not request recertification more often than a doctor specifies unless, pursuant to 29 C.F.R. §§

---

[5]
Sections 825.308(a), (b), and (c) are at issue. These sections state:

> (a) For pregnancy, chronic, or permanent/long-term conditions under continuing supervision of a health care provider (as defined in § 825.114(a)(2)(ii), (iii) or (iv)), an employer may request recertification no more often than every 30 days and only in connection with an absence by the employee, unless:
> (1) Circumstances described by the previous certification have changed significantly (e.g., the duration or frequency of absences, the severity of the
> condition, complications); or
> (2) The employer receives information that casts doubt upon the employee's stated reason for the absence.
> (b)(1) If the minimum duration of the period of incapacity specified on a certification furnished by the health care provider is more than 30 days, the employer may not request recertification until that minimum duration has passed unless one of the conditions set forth in paragraph (c)(1), (2) or (3) of this section is met.
> (2) For FMLA leave taken intermittently or on a reduced leave schedule basis, the employer may not request recertification in less than the minimum period specified on the certification as necessary for such leave (including treatment) unless one of the conditions set forth in paragraph (c)(1), (2) or (3) of this section is met.
> (c) For circumstances not covered by paragraphs (a) or (b) of this section, an employer may request recertification at any reasonable interval, but not more often than every 30 days, unless:
> (1) The employee requests an extension of leave;
> (2) Circumstances described by the previous certification have changed significantly (e.g., the duration of the illness, the nature of the illness, complications); or
> (3) The employer receives information that casts doubt upon the continuing validity of the certification.

29 C.F.R. §§ 825.308(a-c).

825.308(c)(1-3): 1) "the employee requests an extension of leave;" 2) "circumstances described by the previous certification have changed significantly;" or 3) "the employer receives information that casts doubt upon the continuing validity of the certification." As Yntema points out, the USPS does not allege any of these exceptions existed.

The USPS misinterprets § 825.308. When an employee's doctor specifies a duration for intermittent leave or a reduced work schedule, subsection (b) of § 825.308 trumps subsection (a). Subsection (a) applies when a doctor does not specify a duration for a chronic illness, long-term condition, or pregnancy. *Harcourt v. Cincinnati Bell Tel. Co.*, 828 F. Supp. 2d 944, 957 (S.D. Ohio 2005).

In light of these regulations, I conclude that the USPS interfered with Yntema's FMLA rights when it required recertification every thirty days, instead of at ninety day intervals. Because I find that the USPS interfered by requiring recertification more often than allowed, I need not address the other alleged FMLA violation.[6]

Therefore, summary judgment shall be granted with respect to Yntema's interference claim.

### 2. Damages

The FMLA provides for both compensatory and liquidated damages. 29 U.S.C. § 2617(a); 29 C.F.R. § 825.400(c). A plaintiff can only recover damages for actual harm suffered. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

Yntema argues she is entitled to both compensatory and liquidated damages. In addition to lost time at work, Yntema states that she lost sick and personal leave, which reduced her compensation.

---

[6] Any FMLA violation may result in the recovery of damages. 29 C.F.R. § 825.400(c).

10

The USPS argues any damage award should be reduced. A court may reduce an award of liquidated damages where an employer proves that the violation was in good faith and it "had reasonable grounds to believe" its actions were not a violation of the FMLA. 29 U.S.C. § 2617(a)(1)(A)(iii). The USPS contends, moreover, that Yntema cannot show any damage from a violation because she was compensated through arbitration.

Genuine issues of material fact remain as to the amount of compensatory damages, if any, whether Yntema has already been compensated for such damages, and whether the USPS acted in good faith with reasonable grounds to believe its actions complied with the FMLA.

Therefore, the issue of the amount of damages remains to be determined.

### B. Plaintiff's Claim of Retaliation Cannot Prevail

To establish a *prima facie* retaliation claim, an employee must show:

(1) he engaged in an activity protected by the Act;
(2) that this exercise of his protected rights was known to the defendant;
(3) that defendant thereafter took an employment action adverse to the plaintiff; and
(4) that there was a causal connection between the protected activity and the adverse employment action.

*Arban v. West Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003).

If an employee relies on indirect evidence to establish a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employee's discharge. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001). Once the defendant articulates a non-discriminatory reason for the employee's discharge, the employee must prove the "articulated reason is in reality a pretext to mask discrimination." *Id.*

The USPS argues that Yntema cannot establish a *prima facie* case for retaliation because she cannot show the second element – that it was aware Yntema was exercising rights under the FMLA.

Yntema responds with indirect evidence the supervisors involved with her suspension were aware of her FMLA claim. She argues her assertion of FMLA rights and the USPS's confusion regarding these rights triggered her frustration and verbal altercation on the day of her suspension, December 11, 2003.

In response, the USPS contends that it suspended Yntema, not because of her FMLA activity, but because of her "profane and threatening" behavior on December 11, 2003, in light of the "Last Chance Agreement" she previously signed.

Yntema argues the USPS's reason for her termination is pretextual. She argues Simon, "who had a history of confrontations with the plaintiff over her medical restrictions and absences, chose to use the incident as a springboard for removal."[7] In support, she presents an affidavit from Robert Newbold, Vice President of the National Association of Letter Carriers, which states that "[n]o employee, to my knowledge, has been removed for the use of profanity on the work floor."[8] In addition, Yntema submits an arbitration report for her grievance against the USPS, in which the arbitrator found the USPS had no just cause for her termination, and as a result reinstated Yntema as a mail carrier.

I assume *arguendo* that Yntema could make out a *prima facie* case of retaliation. She has not, however, presented evidence sufficient to persuade a rational trier of fact that the enunciated reason for her dismissal – her "profane and threatening" statements in light of the her "Last Chance Agreement" – was pretextual. Although there is a dispute of fact as to what she said and how she said

---

[7] USPS supervisor Simon signed Yntema's termination report.

[8] The USPS contends, however, Yntema was terminated not for her use of profanity, but because her actions were believed to have violated a "Last Chance Agreement."

it on December 11, 2003, there is no dispute that encounter in light of her "Last Chance Agreement" was the basis for the decision to terminate her employment.

Yntema has not presented evidence that, at the time Simon signed Yntema's termination notice he had any reason to disbelieve Hazel and Walton's accounts of Yntema's actions on December 11, 2003, or that he was aware Yntema's "Last Chance Agreement" was invalid. "Where the employer can demonstrate an honest belief in its proffered reason, however, the inference of pretext is not warranted." *Joostberns v. United Parcel Serv., Inc.*, 2006 WL 41189, *6 (6th Cir., Jan. 9, 2006) (unpublished opinion).

Yntema' subsequent reinstatement through the grievance procedure does not undercut the *bona fides* of the original decision. The legal standard under FMLA for a retaliation claim differs from that applied in a grievance proceeding. Neither that proceeding nor its outcome affect either the standard applied by this court in evaluating the merits of the plaintiff's retaliation claim or the outcome here.

Yntema's retaliation claim fails as a matter of law.

### Conclusion

For the foregoing reasons, it is therefore,

ORDERED THAT:

1) Plaintiff's motion for summary judgment be, and the same hereby is, granted with regard to liability as to her FMLA interference claim; and

2) Defendant's motion for summary judgment be, and the same hereby is, granted with regard to plaintiff's retaliation claim and denied with regard to her interference claim.

A scheduling conference is set for March 20, 2006 at 8:30 a.m. to determine a date for further proceedings as to plaintiff's damages regarding her FMLA claim.[9]

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge

---

[9] I previously had advised counsel that, due to my personal acquaintance with one of the likely witnesses relating to plaintiff's retaliation claim, I would adjudicate the then pending motion for summary judgment and thereafter recuse in the event trial were to be held. At that time, I did not anticipate that the sole claim as to which that witness would be testifying would not survive defendant's motion for summary judgment.

In the meantime, I conducted a settlement conference. Though I do not anticipate or believe that my participation in that conference would affect my impartiality at the forthcoming damage hearing, the parties shall jointly advise my Courtroom Deputy Clerk by March 12, 2006, in the event either or both of them desires to have another Judge conduct further proceedings in this case, that this case should be transferred to another Judge. Such communication should not indicate which of the parties wanted such transfer.